IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| BRYAN BLAKE NICHOLS, #75078 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv220 |
| NURSE WHITFIELD, et al. | § | |

### REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Bryan Blake Nichols, a former inmate confined within the Gregg County Jail, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case. For reasons explained below, the Court recommends that Plaintiff Nichols's lawsuit be dismissed, without prejudice, for the failure to exhaust required administrative remedies.

**I. Nichols's Complaint**

Nichols initiated this proceeding on June 8, 2022, while housed within the Gregg County Jail. He asserts that—on June 5, 2022—he fell on the floor, slipping into an unconscious state. Defendants Whitfield and Davis failed to timely revive him, (Dkt. #1, pg. 4). Both Defendants "lacked proper medical tools" to treat him and lacked proper education and training. Nichols maintains that Defendants failed to timely diagnose him, causing him to suffer loss of consciousness for "over six minutes." *Id*. Moreover, he asserts that the Gregg County Jail failed to train Defendants Whitfield and Davis—and further failed to supervise them. Nichols seeks monetary damages and for a court order correcting "all of Defendants' failures." *Id*.

1

**II. Legal Standards**

Under 28 U.S.C. § 1915A, a court shall review any complaint in a civil action wherein a prisoner seeks redress from a governmental entity or officer, or employee of a governmental entity. During its review, the court must identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v, FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is **not** akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556 (emphasis supplied).

Although all well-pleaded facts are taken as true, the district court need not accept true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. Nov. 7, 2012) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a

"formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id*.

**III. Discussion and Analysis**

The Court understands that Nichols argues that Defendants acted with deliberate indifference to his serious medical needs while housed at the Gregg County Jail. He also maintains that the Gregg County Jail failed to train and supervise Defendants Whitfield and Davis.

Nichols's lawsuit, however, suffers from a fundamental problem that precludes relief. The face of his complaint reveals that he failed to exhaust his required administrative remedies prior to filing this lawsuit. Nichols readily admits that he did not exhaust his required administrative remedies, as he specifically notes "I have no knowledge of any applicable grievance procedure" on his complaint, (Dkt. #1, pg. 3).

It is well-settled that inmates must exhaust any and all administrative remedies before proceeding in federal court. *See Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (explaining that pre-filing exhaustion is both mandatory and non-discretionary). Congress enacted the Prison Litigation Reform Act ("PLRA") in 1996, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The exhaustion provision was unanimously upheld by the Supreme Court in *Booth v. Churner*, 532 U.S. 731 (2001). The Court subsequently held that exhaustion is mandatory, and that the requirement will not be excused when an inmate fails to properly exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Proper exhaustion means that an inmate must not only pursue all available avenues of relief but must also comply with all administrative deadlines and procedural rules. *Id.* at 90-91. The Fifth Circuit recently reiterated

the principle that "[p]re-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez*, 702 F.3d at 788.

The Supreme Court elaborated further about the exhaustion requirement in *Jones v. Bock*, 549 U.S. 199 (2007). It was noted that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216. Proper exhaustion is determined by reference to the applicable agency's grievance procedures. *Jones*, 549 U.S. at 217-18; *Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013).

The Court takes judicial notice that the Gregg County Jail has a written grievance policy for inmate grievances which is detailed in the Inmate Handbook. *See Muckleroy v. White*, case no. 6:19cv363 (Dkt. #32-1, p. 2; Dkt. #32-3, p. 1) (E.D. Tex. 2020); *Moody v. Crumbaker*, case no. 6:20cv243 (Dkt. #30-1, p. 2; Dkt. #30-3, p. 1) (E.D. Tex. 2021). The Jail provides grievance forms for inmates to write their grievance. *See* case no. 6:19cv363 (Dkt. # 32-1, p. 2).

Upon receipt of a grievance, the Grievance Board reviews the grievance and determines the appropriate action to redress the grievance. (Dkt. #32-1, p. 2; Dkt. #32-3, p. 1). The Grievance Board submits a written response to the inmate within 15 days. *Id.* If the inmate disagrees with the response of the Grievance Board, he may appeal the decision to three levels. *Id.* The first appeal is submitted to the Facility Lieutenant. *Id*. The second appeal of the Facility Lieutenant's decision is to the Jail Administrator. (Dkt. #32-1, pp. 2-3). The third appeal of the Facility Administrator's decision is to the Sheriff. (Dkt. #32-1, p. 3). The Sheriff's decision is final. *Id.*

The Jail also utilizes a kiosk system in the jail cells. The inmates do not have to use this system, but it is available to them in addition to the paper forms. *Id.* When an inmate submits a

4

grievance using the kiosk, the grievance is then transmitted to the designated officers serving in the Grievance Board position. *Id.* The process for review, response, and appeal are the same when grievances are sent through the kiosk as they are for the paper forms. *Id.*

All steps of the grievance procedure must be completed for a grievance to be considered exhausted. *Johnson* 385 F.3d at 515. The Supreme Court has clearly specified that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. Accordingly, an inmate in the Gregg County Jail like Nichols, prior to filing a lawsuit, must pursue this multi-step process that includes grieving to jail staff—and if still dissatisfied—submitting an additional appeals.

Here, Nichols admits that he failed to exhaust his required administrative remedies before filing this lawsuit—claiming that he was "unaware" of any grievance procedure. Ignorance of a prison's grievance procedure does not excuse noncompliance, especially wherein, as here, a plaintiff does not indicate that Defendants misled him concerning the grievance process or that he was purposely thwarted from submitting a grievance. *See Aguirre v. Dyer*, 233 F. App'x 365, 365 (5th Cir. 2007); *Plaisance v. Cain*, 374 F. App'x 560, 561 (5th Cir. 2010).

Even if Nichols was not given an inmate handbook at the jail containing the applicable grievance procedures, the Court takes judicial notice that the Gregg County Jail's grievance procedures were knowable and that a specific grievance procedure was in place at the time. *See Leggett v. Lafayette*, 608 F. App'x 187, 191 (5th Cir. 2015) (finding that even if prisoner "was not informed of the relevant grievance procedure, uncontested record evidence indicates that a specific grievance was in place at the time, its contours were knowable, and no one attempted to dissuade [the prisoner] from using it."); *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015) (explaining that courts may not deem "grievance procedures unavailable merely because an inmate was

5

ignorant of them, so long as the inmate had a fair, reasonable opportunity to apprise himself of the procedures.").

Furthermore, Nichols's complaint and the attachment reveal that he failed to pursue these grievance avenues to completion prior to filing this lawsuit. As explained above, the Gregg County Jail employs a three-step grievance procedure. Nichols explains that he fell and was unconscious on June 5, 2022—and his complaint shows that he filed this lawsuit on June 8, 2022, (Dkt. #1, pg. 5). The docket demonstrates that the incident occurred some time in the evening on June 5, 2022, (Dkt. #6, pg. 4) (affidavit).

Accordingly, the incident forming the basis for this lawsuit occurred two days before Nichols filed this lawsuit—thereby showing that Nichols did not pursue the required grievance procedure to completion *prior* to filing this lawsuit. *See Dillon v. Rogers*, 596 F.3d 260, 272 n.3 (5th Cir. 2010) (district court may dismiss a case prior to service on the defendants for the failure to state a claim, predicated on the failure to exhaust, if the complaint itself makes it clear the prisoner did not exhaust).

In other words, here, Nichols plainly did not submit a grievance to Jail staff, receive a response, file an appeal to the next level, receive a response, and then submit a final appeal to the Sheriff—all within less than two days. In *Conklin v. Randolph*, the Fifth Circuit reasoned as follows:

> As Conklin initiated his § 1983 complaint five days after the disciplinary charge that was the subject of his § 1983 complaint was filed against him, the district court did not err in holding that the lack of exhaustion was readily apparent from the face of the complaint. *See Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007). Therefore, Conklin has not shown that the district court erred by dismissing his § 1983 complaint for failing to exhaust administrative remedies. *See Powe v. Evans*, 177 F.3d 393, 394 (5th Cir. 1999).

553 F. App'x 457, 458 (5th Cir. 2014) (Mem) (unpublished); *see also Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001) (explaining that a prisoner must "pursue the grievance remedy

to conclusion," which means a prisoner must receive a response for both his Step One and Step Two grievances before a claim is fully exhausted). As in *Conklin*, here, Nichols's complaint plainly shows that he could not have exhausted his required administrative remedies to completion before filing this lawsuit because he did not have sufficient time to do so.

Because Nichols's failure to exhaust his required administrative remedies is plainly evident on the face of his complaint through his own words and the timing of his complaint, his complaint may be dismissed for the failure to state a claim predicated on the failure to exhaust. *Carbe*, 492 F.3d at 328.

## RECOMMENDATION

For these reasons, the undersigned recommends the above-styled civil action be dismissed, without prejudice, for the failure to exhaust administrative remedies.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 10th day of April, 2023.**

7

*John D. Love*
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE